UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


RASHID BROWN,

       Plaintiff,

v.                                 Case No. 2:06-cv-62
                                  HON. R. ALLAN EDGAR

DENISE GERTH,

       Defendant.

_____/


## REPORT AND RECOMMENDATION

Plaintiff Rashid Brown, a prisoner currently confined at the Alger Maximum Correctional Facility (LMF), filed this prisoner 42 U.S.C. § 1983 action against defendant Denise Gerth.  At the time of the allegations Defendant worked as a Case Manager at LMF.  She is sued in her individual capacity.

On August 25, 2005, Plaintiff gave Defendant unsealed outgoing mail, including a Step III prison grievance appeal.  The envelope containing the Step III grievance appeal also contained a washcloth sealed in a plastic bag.  Plaintiff states that this washcloth was physical evidence being sent as an exhibit to the grievance appeal.  Defendant inspected the envelope and discovered the bag containing the washcloth.  Plaintiff alleges Defendant then threw the washcloth to the floor, stating "You don't send exhibits to the third step, read your policy."  Plaintiff alleges that he requested the outgoing mail either be sent with the washcloth attached or returned to him. Plaintiff maintains Defendant mailed the grievance form, without the washcloth, over Plaintiff's objections.  Plaintiff filed a grievance regarding the incident later that day.

Plaintiff states that on September 19, 2005, Defendant refused to notarize legal materials pertaining to a separate lawsuit Plaintiff was pursuing.  Plaintiff threatened to file a grievance, whereupon Defendant allegedly withheld the disbursement receipts that normally accompany the processing of legal materials, stating that "[t]hey are going in the trash." Plaintiff further alleges that he told Defendant she could not take this action without his filing a grievance, and that she responded "I can if I get you first . . . I know how to fix you."

On September 19, 2005, Defendant wrote a misconduct report stating that at approximately 9:45 a.m. on September 15, 2005, Plaintiff sexually exposed himself to her when she picked up his legal mail.  The report notes that the delay in its filing was due to mobilization and reassignment.  At the misconduct hearing, Plaintiff was found not guilty on the basis that the video records did not show Defendant at Plaintiff's cell at the time indicated on the misconduct report. Plaintiff continues to deny that the alleged misconduct occurred at all.  Plaintiff states that Defendant has continued to make representations to other staff that Plaintiff routinely displayed inappropriate sexual behavior while receiving notary and legal mail services, and that these representations resulted in a memo directing Plaintiff to remain seated on his bunk with his hands at his side while receiving such services.

On September 26, 2005, Plaintiff purchased 100 sheets of typing paper, for which the usual price is seventy cents.  Defendant charged him ninety-five cents for this purchase, which is the usual price for 100 sheets of carbon paper.  Plaintiff filed a grievance regarding the disparity, and the reviewer found that his account should be credited twenty-five cents for the overcharge.

Plaintiff claims that Defendant's refusal to attach the washcloth to his grievance appeal on August 25, 2005, had the effect of censoring his mail, that he was entitled to a hearing upon its rejection under Michigan Department of Corrections (MDOC) Policy Directive 05.03.118

section T, and that this action constituted a violation of his freedom of speech under the First Amendment and right to petition the government for redress of grievances.

Plaintiff next claims that the sexual misconduct report filed by Defendant on September 19 was a fabrication and that the report was filed in retaliation for the prior grievance Plaintiff filed regarding defendant's refusal to include the washcloth in his previous grievance appeal. Plaintiff claims that Defendant further retaliated against him by refusing to give him notary service, by withholding his disbursement receipts, by overcharging him for his legal supplies, by refusing to give him an indigent store list, and by making false statements to other staff regarding his allegedly inappropriate sexual conduct. Plaintiff has also raised a state law claim of libel against defendant.

Presently before the Court is Defendant's Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Chelates Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375,

382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant's motion asserts that she is entitled to qualified immunity with respect to Plaintiff's claim that she censored his mail in violation of the First Amendment because there is no clearly established federal right to mail physical evidence with a grievance appeal or to be provided with a postage loan to do so.  Defendant notes that while inmates have a First Amendment right to send and receive mail, prison officials may impose restrictions that are reasonably related to security or other legitimate penological objectives.  *See Turner v. Safley,* 482 U.S. 78, 89 (1987).  Because there is no provision that allows for the disbursement of a postage loan for the submission of physical evidence with a grievance appeal under the MDOC Policy Directive regarding prisoner mail, Defendant argues that she properly refused to authorize any postage loan that would allow the nonconforming physical exhibit in Plaintiff's mail to be processed.  In a supporting affidavit, Defendant states that Plaintiff resubmitted a request for the disbursement of a postage loan to mail the grievance appeal without the washcloth, and that this request was granted.  It is not disputed that the unaccompanied grievance appeal was mailed on August 26.  Defendant argues that Plaintiff's rights under the First Amendment were not implicated by her initial refusal to authorize the indigent postage loan or her refusal to process Plaintiff's mail with insufficient postage and she is therefore entitled both to qualified immunity.

- 4 -

With regard to Plaintiff's claim that Defendant violated his First Amendment right of access to the courts, Defendant cites *Young v. Gunley*, No. 01-2111, 2002 US App LEXIS 4209 (CA 6 Mar 7, 2002), which supports the proposition that "[a] grievance appeal does not implicate the First Amendment right of access to the courts because there is no inherent constitutional right to an effective prison grievance procedure." *Id*. at **4.

Plaintiff responds that (1) the removal of the washcloth from his grievance appeal changed the meaning of the communication he was trying to make and is *per se* censorship of his speech in violation of the First Amendment; (2) that this right is clearly established and is one which a reasonable official would be aware; and (3) that there was no legitimate penological interest supporting the refusal to mail the grievance appeal with the washcloth attached. Plaintiff also filed the affidavits from prison inmate Spears and himself that directly contradict Defendant's affidavit on the issue of whether she mailed the grievance appeal without the washcloth over Plaintiff's express objection or whether Plaintiff voluntarily resubmitted the grievance appeal without the washcloth and received an indigent postage loan to do so.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true

notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991)

In Plaintiff's response to Defendant's Motion for Summary Judgment, Plaintiff agrees that his complaint is not based on an inability to effectively utilize the prison grievance procedure. In any event, the Sixth Circuit and other circuit courts have held that there is no constitutional right to access an institutional grievance procedure. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 510 U.S. 1022 (1995); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998).

Plaintiff has not made a facial attack on any provision of MDOC Policy Directive 05.03.118, nor does he challenge Defendant's authority to make an initial inspection of his mail to determine whether it qualified for an indigent postage loan. Plaintiff's claims must therefore be analyzed solely in relation to Defendant's specific conduct. The viability of Defendant's qualified immunity defense turns on the first step of the inquiry: whether any violation of Plaintiff's rights

- 6 -

under the First Amendment occurred. Plaintiff's contends that Defendant's refusal either to authorize an indigent postage loan for the nonconforming grievance or to mail the grievance without proper postage is *per se* censorship of his speech. This argument is untenable. The issue here is not an affirmative act by Defendant directly preventing Plaintiff from conveying his message; rather this was the negative act of refusing to authorize an indigent postage loan that had no basis in the relevant Policy Directive. Defendant is correct in noting that the governing Policy Directive contains no provision which authorizes an indigent postage loan for the attachment of physical evidence to a Step III grievance appeal. Prison authorities may impose restrictions on the processing of prisoner mail that are "reasonably related to legitimate penological interest." *Turner v. Safley,* 482 U.S. 78, 89 (1987). The conservation of prison administrative resources is a legitimate interest. Plaintiff's reliance on *Procunier v. Martinez*, 416 U.S. 396 (1974), is misplaced. That case concerned censorship guidelines expressly addressed to the written content of inmate mail. This case, however, involves the denial of an indigent postage loan for the processing of the mail material itself.

The question of whether Plaintiff's grievance appeal with the washcloth removed conveyed the same "speech" as the appeal which was ultimately sent need not be decided here. The latter message could not and would not have been conveyed under the existing postage loan guidelines which, as noted above, are reasonably related to legitimate penological interests. Defendant's specific actions thus did not change or impede the content of Plaintiff's speech in any way inconsistent with MDOC Policy Directive 05.03.118.

The presentation of conflicting affidavits regarding whether Defendant mailed the grievance appeal without the washcloth over Plaintiff's objection does not change this result. Taking Plaintiff's factual allegations as true, there is still no basis for any claim that such an action impeded any speech which Plaintiff would otherwise have had the capacity to make within the parameters of

MDOC Policy Directive 05.03.118.  Furthermore, a refusal of Defendant to physically return Plaintiff's mail upon rejection for insufficient postage is consistent with MDOC Policy Directive 05.03.118.  *See Young*, No. 01-2111, 2002 US App LEXIS 4209 at **2 (CA 6 Mar 7, 2002).

In conclusion, in the opinion of the undersigned Defendant is entitled to summary judgment on Plaintiff's mail-censorship claim because Plaintiff has failed to aver or demonstrate any facts that would support a conclusion that Defendant censored his mail in violation of his right to freedom of speech under the First Amendment.  Defendant is in any event entitled to qualified immunity on this issue: Even if denying an indigent postage loan for the purpose of mailing a physical exhibit with a prison grievance appeal was violative of some federal right, such a right is not clearly established.  *See Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997) (A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.) (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Defendant next argues that Plaintiff's First Amendment retaliation claim fails as a matter of law because the facts do not demonstrate that Defendant committed adverse action against Plaintiff in retaliation for his use of the prison grievance procedure.  With regard to Plaintiff's allegation that Defendant refused to notarize the unrelated lawsuit, Defendant argues that a refusal of notary services, which is demonstrably limited and temporary, does not rise above the level of a de minimis injury so as to be constitutionally cognizable.  Defendant also submits that the filing of the sexual misconduct report against Plaintiff is also not sufficiently adverse, as the Plaintiff was found not guilty and suffered no direct administrative consequences as a result of the misconduct ticket.  Finally, Defendants argues that Plaintiff has failed to meet his burden to produce evidence

demonstrating a causal connection between his use of the grievance process and the allegedly adverse actions, noting particularly the time gap of almost a month between the filing of the grievance against Defendant on August 25 and the allegedly retaliatory acts on September 19 and September 26.

Defendant argues that, based on Plaintiff's history and conduct, she would have charged Plaintiff with sexual misconduct regardless of Plaintiff's use of the grievance process against her. Therefore, the issuance of the sexual misconduct report could not have been in retaliation for the grievance Plaintiff filed against Defendant. Moreover, the result of Defendant's alleged statements regarding Plaintiff's tendency to expose himself – a memo directing Plaintiff to sit on his bunk with his hands at his sides when receiving mail services from a female staff member– does not harm Plaintiff such as to constitute adverse action. Defendant notes that Plaintiff has not produced any evidence in support of his allegation that Defendant refused to issue him an indigent store list. Defendant further notes that Plaintiff's trust account records reflect the existence of an indigent store order for supplies during the relevant time period. Finally, Defendant submits that Plaintiff's complaint of being overcharged by twenty-five cents is a *de minimis* injury not worthy of constitutional consideration.

Plaintiff argues that the filing of an allegedly fabricated sexual misconduct report is an adverse action for purposes of First Amendment retaliation. Plaintiff cites *Brown v. Crowley*, 312 F.3d 782 (6th Cir. 2002), in support of the proposition that "although [he] was already in administrative segregation and a hearing officer ultimately found him not guilty, the issuance of the major misconduct charge subjected him to the risk of significant sanctions." *Id*. at 789. Plaintiff claims that he did not expose himself to Defendant on September 15, 2005. Plaintiff claims that the gap in time between the alleged exposure and the filing of the misconduct report on September 19

is itself evidence that the misconduct did not occur, as is the not guilty finding made by the hearing officer regarding the incident.  Plaintiff asks the court to draw the inference that Defendant's fabrication of misconduct charges could only have been in retaliation for Plaintiff's use of the grievance procedure.  In his brief opposing Defendant's motion for summary judgment, Plaintiff raises new claims that, in addition to being retaliatory for the August 25 grievance against Defendant, the sexual misconduct report was made in retaliation for Plaintiff's September 19 attempt to have Defendant notarize legal materials pertaining to a lawsuit against one of Defendant's co-workers, as well as for his threat to file a grievance regarding her alleged refusal to notarize the same. Plaintiff essentially argues that because the incidents on August 25 and September 19 occurred before Defendant issued the sexual misconduct report, they were the cause of that report.  Plaintiff also restates his claim that Defendant withheld notary services, overcharged him for legal supplies, and "defamed" him in retaliation for his use of the prison grievance process.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.

The filing of a prison grievance is constitutionally-protected conduct for which a prisoner cannot be retaliated against.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).  Plaintiff must prove that the exercise of the protected right was a substantial or motivating factor in Defendant's alleged retaliatory

- 10 -

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).

"[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Plaintiff must demonstrate a "chronology of events from which retaliatory animus on the part of defendants" could reasonably be inferred. *Id.* at 108-09; *see also Murray v. United States Bureau of Prisons*, No. 95-5024, 1997 WL 34677, at * 4 (6th Cir. Jan. 28, 1997).  Conclusory allegations of retaliatory motive "with no concrete and relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. April 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. March 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994).

Plaintiff here has merely alleged the ultimate fact of retaliation.  Even taking his factual assertions as true, Plaintiff has not produced any evidence indicating a causal relationship between the allegedly retaliatory acts and his use of the prison grievance process.  Plaintiff's affidavit merely states conclusory allegations regarding Defendant's motive in taking the allegedly adverse actions.  Plaintiff is mistaken in his proposition that the finding of not guilty at his sexual misconduct hearing conclusively establishes that the charges were fabricated.  This finding does not have any bearing on the question of whether the issuance of the misconduct report had a retaliatory motive.  Moreover, Plaintiff cannot show that the filing of this misconduct report could deter an ordinary person from engaging in protected conduct.

Defendant's denial of notary services on September 19 for Plaintiff's unrelated lawsuit is not sufficiently adverse to deter a reasonable person from continuing to utilize the prison grievance procedure. This is particularly apparent when viewed in light of the fact that the lawsuit in question was actually filed on September 20. Plaintiff suffered, at most, a temporary limitation on his ability to obtain notary services. Likewise, Plaintiff's claim that Defendant overcharged him for legal materials by twenty-five cents is a classic example of a *de minimis* injury which does not implicate the Constitution. These allegations also suffer from a total lack of evidentiary support regarding their causal connection to Plaintiff's protected conduct.

Plaintiff has produced no evidence that contradicts his Trust Account Statement which establishes that Plaintiff received disbursements for mail services, legal copies, and legal services following the incident on August 25, 2005. Plaintiff's conclusory claim that Defendant withheld such services is completed unsupported and therefore fails to raise a question of material fact for trial.

Finally, Defendant's affidavit indicates that she would have written the sexual misconduct report on September 19, 2005, as well as discussed Plaintiff's inappropriate behavior with staff, regardless of Plaintiff's use of the prison grievance process. The affidavit indicates that Plaintiff has a history of inappropriate sexual behaviors, including those that Defendant discussed with staff. Plaintiff has not produced any evidence contradicting this alleged history of inappropriate sexual behavior towards female staff. It is thus a fair inference that these discussions would have occurred regardless of Plaintiff's filing of prison grievances, and therefore were not in retaliation for the same.

Plaintiff asserts a state law libel claim regarding statements made by Defendant regarding his inappropriate sexual behavior. He has not expressly addressed the jurisdiction of this

court to hear the claim.  To the extent that Plaintiff is claiming his state law rights were violated, it is recommended that this court refuse to exercise pendent jurisdiction over such claims.  Claims raising issues of state law are best left to determination by the state courts, particularly in the area of prison administration.  In addition, pendent jurisdiction over state law claims cannot be exercised after all federal claims have been dismissed.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 726-727, 86 S. Ct. 1130, 1139 (1966); *Moon v. Harrison Piping Supply, et al.*, No. 05-1808, ___ F.3d ___ (6th Cir. Sep. 28, 2006); *Smith v. Freland*, 954 F.2d 343, 348 (6th Cir.), *cert. denied*, 504 U.S. 915, 112 S.Ct. 1954 (1992).

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's Motion for Summary Judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (Docket #29) be granted and this case be dismissed in its entirety.  It is further recommended that Plaintiff's Motion to Strike (Docket #40) be denied.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 6, 2007